IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| T. D.,[1] | |
|---|---|
| Plaintiff, | Case No. 3:22-cv-00225 RRB |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security, | **ORDER REMANDING FOR FURTHER PROCEEDINGS** **(Docket 16)** |
| Defendant. | |

## I. INTRODUCTION

Plaintiff, T.D. (hereinafter "Claimant"), filed an application for Supplemental Security Income benefits on September 23, 2019, alleging disability beginning August 18, 2018. The ALJ denied his claim on August 12, 2021.[2] Claimant has exhausted his administrative remedies and seeks relief from this Court.[3] He argues that the determination by the Social Security Administration ("SSA") that he is not disabled, within the meaning of the Social Security Act ("the Act"),[4] is not supported by substantial

---

[1] Plaintiff's name is partially redacted pursuant to Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States. *See* Memorandum, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), *available at* https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.
[2] *See* Tr. 17–27.
[3] Dockets 1, 16.
[4] 42 U.S.C. § 423; 42 U.S.C. § 1381.

evidence and that the Administrative Law Judge ("ALJ") committed legal errors. Claimant seeks a reversal of the decision by the SSA and a remand for further proceedings.[5]

The Commissioner of the SSA ("Commissioner") filed an answer to the Complaint and an answering brief in opposition. Claimant has replied. For the reasons set forth below, Claimant's Motion for Remand at **Docket 16** is **GRANTED,** the Commissioner's final decision is **VACATED,** and the case is **REMANDED** to the SSA for further proceedings.

## II. STANDARD OF REVIEW

Disability is defined in the Act as:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.[6]

The Act provides for the payment of disability benefits to individuals who have contributed to the social security program and who suffer from a physical or mental disability.[7] Specifically:

> An individual shall be determined to be under a disability only if his . . . impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any

---

[5] Claimant does not request a remand for calculation of benefits.
[6] 42 U.S.C. § 423(d)(1)(A).
[7] 42 U.S.C. § 423(a).

*T. D. v. Kijakazi*　　　　　　　　　　　　　　　　　　　　　　　　　Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings　　　　　　　　　　　　　　　　　　　　　　　Page 2
Case 3:22-cv-00225-RRB   Document 20   Filed 12/06/23   Page 2 of 15

individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.[8]

The Commissioner has established a five-step process for determining disability within the meaning of the Act,[9] relevant portions of which are addressed below. A claimant bears the burden of proof at steps one through four in order to make a *prima facie* showing of disability.[10] If a claimant establishes a *prima facie* case, the burden of proof then shifts to the agency at step five.[11]

A decision by the Commissioner to deny disability benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error.[12] "Substantial evidence" has been defined by the United States Supreme Court as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[13] Such evidence must be "more than a mere scintilla," but also "less than a preponderance."[14] In making its determination, the Court considers the evidence in its entirety, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.[15] If the evidence is susceptible to more than one rational interpretation, the

---

[8] 42 U.S.C. § 423(d)(2)(A).
[9] 20 C.F.R. § 404.1520(a)(4).
[10] *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1096 n.1 (9th Cir. 2014) (quoting *Hoopai v. Astrue*, 499 F.3d 1071, 1074–75 (9th Cir. 2007)); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).
[11] *Treichler*, 775 F.3d at 1096 n.1.
[12] *Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (citing *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990)).
[13] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).
[14] *Perales*, 402 U.S. at 401; *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975).
[15] *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

*T. D. v. Kijakazi*            Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings        Page 3
Case 3:22-cv-00225-RRB   Document 20   Filed 12/06/23   Page 3 of 15

ALJ's conclusion must be upheld.[16]  Courts "review only the reasons provided by the ALJ and may not affirm the ALJ on a ground upon which he did not rely."[17]  If an ALJ commits legal error, courts will uphold the decision if it is harmless.[18]  An error is harmless if it is "inconsequential to the ultimate nondisability determination."[19]

### III.  DISCUSSION

**A.  Background**

This is Claimant's second application for SSI benefits, the first having been denied on August 21, 2018.[20]  At the first hearing, on August 7, 2018, the ALJ took testimony from Claimant, as well as non-examining psychiatrist, Dr. Cheryl Buechner, and vocational expert ("VE") Daniel Labrosse.[21]  Claimant testified that he lived with his mother.  He took Clonazepam, Effexor, and Klonopin, the latter being effective to keep anxiety "right at the doorstep," with side effects of feeling intoxicated, but "it keeps me out of the ER."  He reported that he has "had anxiety my whole life but I could control it.  I could do jobs and tasks and I could be having anxiety attack in my head and no one even know." He testified that as he has gotten older it has been harder to manage, despite several years of outpatient treatment to learn exercises to manage, and he has been unable to identify any specific trigger for his panic attacks.[22]  ALJ Paul Hebda concluded that

---

[16] *Gallant v. Heckler*, 753 F.2d 1450, 1452–53 (9th Cir. 1984).
[17] *Garrison*, 759 F.3d 995, 1010 (9th Cir. 2014).
[18] *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012).
[19] *Id.* (citation omitted).
[20] Tr. 103.
[21] Tr. 33.
[22] Tr. 41–49.

Claimant had not been under a disability from June 7, 2005, through the date of his decision.[23]

Claimant's second application September 23, 2019, alleged disability starting on August 18, 2018.[24] The second hearing was held on July 15, 2021, where Claimant again testified, and the ALJ took testimony from Vocational Expert Mitchell Schmidt.[25] In 2021, Claimant testified that his conditions had worsened. He described a "roller coaster" of symptoms cycling through depression, anxiety, panic attacks, and the desire to flee. In order to take enough medication to manage the symptoms, he would be "a zombie." He sees a therapist once a week, and every three months he sees a provider for medication management. His provider has told him that his medication is "as good as it's going to get" for managing anxiety. He had an unsuccessful volunteer position as a "greeter" at Hope Community Resources,[26] and described being fired from a pizza place for having a panic attack. He avoids the grocery store because he had a panic attack there.[27]

ALJ Mark Baker denied benefits on August 12, 2021, and this appeal followed.[28] Claimant alleges that the ALJ erred in denying benefits, for a second time, by failing to fully account for his "severe mental impairments" at Step 2 and in determining

---

[23] Tr. 103.
[24] Tr. 17.
[25] Tr. 55.
[26] "Hope Community Resources, Inc., is a non-profit disabilities service provider based in Anchorage, Alaska . . . [which] provides services and supports to people of all ages and abilities who experience an intellectual or developmental disability, traumatic brain injury, or mental health challenges." www.hopealaska.org/welcome (last visited November 22, 2023).
[27] Tr. 69–70.
[28] Tr. 27.

*T. D. v. Kijakazi*  Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings  Page 5
Case 3:22-cv-00225-RRB   Document 20   Filed 12/06/23   Page 5 of 15

his residual functional capacity.[29]  At all times relevant to the current ALJ's adjudication, Claimant was "closely approaching advanced age" (age 50–54), with a marginal education and no past relevant work.[30]

There is no dispute that Claimant does not suffer from any significant physical limitations.  Rather, he alleges disability based on various mental disorders, including **panic disorder; generalized anxiety disorder; and major depressive disorder**.  Claimant argues that the ALJ's decision is not supported by substantial evidence and that the ALJ committed legal errors in denying him benefits.  Specifically, he contends that "the ALJ did not reasonably support his findings with a logical connection between the evidence and his analysis of the State Agency administrative findings and Plaintiff's testimony . . . by relying on highly selective references to the record to do so, and by failing to account for all the limitations set forth therein."[31]

**B.     2021 ALJ Decision**

   **(1)     Five step analysis**

The ALJ concluded that:  **Step 1**, Claimant had not engaged in substantial gainful activity since his alleged onset date; **Step 2**, Claimant suffered from severe impairments, including **panic disorder; generalized anxiety disorder; and major depressive disorder**;[32] and **Step 3**, Claimant's severe impairments did not meet any medical listings.

---

[29] Docket 16 at 1.
[30] Tr. 25; 59–60.
[31] Docket 16 at 11.
[32] The ALJ further found bipolar disorder to be non-medically determinable, and Claimant's history of obesity, hypertension, and hyperlipidemia to be nonsevere impairments.

Before proceeding to Step 4, a claimant's residual functional capacity ("RFC") is assessed. RFC is the most someone can do despite their mental and physical limitations.[33] In determining a claimant's RFC, the ALJ must base findings on "all of the relevant medical and other evidence," including a claimant's testimony regarding the limitations imposed by his impairments.[34] This RFC assessment is used at both Step Four and Step Five.[35] In evaluating his RFC, the ALJ concluded that Claimant had the capacity to perform "a full range of work at all exertional levels but with . . . nonexertional limitations," as follows:

> [T]he claimant is able to concentrate in the workplace for two hours before requiring a break; limited to perform simple, routine tasks; can occasionally interact with supervisors, co-workers, and the general public; can frequently respond appropriately to changes in a routine work setting; requires a low stress work environment, defined as requiring only occasional independent decision-making or use of work related judgement, and no responsibility for the safety of others; no fast paced production quotas, but rather goal-oriented work; and no tandem work (solo work only).[36]

At **Step 4**, Claimant had no past relevant work. At **Step 5** the burden of proof shifts to the Commissioner.[37] With the assistance of a vocational expert, the ALJ concluded that Claimant was able to perform work in the national economy, such as Battery Stacker, Floor Waxer, and Hand Packager.[38]

---

[33] *Berry v. Astrue*, 622 F.3d 1228, 1233 (9th Cir. 2010); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).
[34] 20 C.F.R. § 404.1545(a)(3).
[35] 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).
[36] Tr. 21.
[37] *Treichler*, 775 F.3d at 1096 n.1.
[38] Tr. 88–89.

*T. D. v. Kijakazi*  Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings  Page 7
Case 3:22-cv-00225-RRB   Document 20   Filed 12/06/23   Page 7 of 15

**(2) Listed impairments**

The ALJ's analysis included a detailed discussion of listings 12.04 (Depressive, bipolar and related disorders) and 12.06 (Anxiety and obsessive-compulsive disorders), and whether the "paragraph B" criteria were satisfied. "To satisfy the 'paragraph B' criteria, the mental impairments must result in **one extreme** limitation or **two marked** limitations in any of four areas of functioning.[39] An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis. A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis."[40]

In 2018, non-examining psychiatric expert, Dr. Cheryl Buechner, performed a record review and testified telephonically at the hearing at the request of the ALJ. She identified the "primary medically determinable impairment" as "either panic attacks, panic disorder with agoraphobia or generalized anxiety with panic features," falling under listing 12.06.[41] She opined that Claimant did not meet the listing, rating his limitations as "mild" to "moderate," with only one area suggesting "marked episodes when attempting to interact with the public."[42] The ALJ did not take testimony from a psychiatric expert at the 2021 hearing.

The ALJ concluded that Claimant's underlying mental impairments could reasonably be expected to produce his pain or other symptoms, and turned his analysis to

---

[39] The four areas are "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(a)(3).
[40] Tr. 20.
[41] Tr. 38.
[42] Tr. 39.

*T. D. v. Kijakazi*  Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings  Page 8
Case 3:22-cv-00225-RRB   Document 20   Filed 12/06/23   Page 8 of 15

"evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities."[43] The ALJ concluded that Claimant's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record.[44]

The ALJ found that Claimant had **mild limitations** in understanding, remembering, or applying information, and in his ability to adapt or manage himself. The ALJ also found **moderate limitations** in Claimant's ability to concentrate, persist, or maintain pace, and in interacting with others. The ALJ found it significant that Claimant could "handle self-care and personal hygiene, spend time with his children, and get along with caregivers," while maintaining "appropriate grooming and hygiene" and having "no problems with temper control." Accordingly, because Claimant's mental impairments do not cause at least two "marked" limitations or one "extreme" limitation, the "paragraph B" criteria were not satisfied.[45]

In support of his conclusion that Claimant's statements were not entirely consistent with the medical evidence, the ALJ cited a May 2019 new patient evaluation wherein the provider noted:

> adequate/appropriate appearance and grooming, good/appropriate eye contact, normal psychomotor activity, cooperative attitude, normal speech, "good" mood, euthymic affect, linear/goal directed thought process, normal thought content with no suicidal/homicidal thoughts and no delusions,

---

[43] Tr. 22.
[44] Tr. 22.
[45] Tr. 20.

*T. D. v. Kijakazi*     Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings     Page 9
Case 3:22-cv-00225-RRB    Document 20    Filed 12/06/23    Page 9 of 15

> normal perception with no hallucinations, normal cognition with full orientation, intact remote memory, normal fund of knowledge, and fair insight and judgment.[46]

The ALJ cited similar chart notes dated September, October, and November 2019, as well as February, June, September, and December 2020, finding that Claimant "continued to be cooperative and attentive in follow up visits . . . through June 2021."[47]

The ALJ was unpersuaded by the opinions of consultative examiner Daniel Gonzales, Ph.D., who performed a mental status examination at the request of the Alaska State Disability Determination Services in January 2018. Dr. Gonzales noted that Claimant last worked full time in 2013 as a dishwasher and pizza deliverer, but "stopped after two weeks of employment due to low productivity and poor job performance due to panic episodes."[48] Dr. Gonzales found Claimant to be "forthright" in his self-presentation, and opined that Claimant's ability to interact with peers, supervisors, and the general public was "**grossly impaired**," his ability to maintain concentration and focus on simple or detailed repetitive work was "**markedly impaired**," and his ability to concentrate on multiple tasks was also "**markedly impaired**."[49] But the ALJ found that Dr. Gonzales did not provide specific support for the conclusions and found them "grossly inconsistent with the numerous mental status evaluations discussed above, which were continuously largely

---
[46] Tr. 22 citing Tr. 601–07
[47] Tr. 22–24.
[48] Tr. 312.
[49] Tr. 314.

within normal limits."[50] Moreover, Dr. Gonzales had performed his evaluation within the previously adjudicated period.[51]

In contrast, the ALJ found the opinions of the State agency psychiatric consultants "generally persuasive." Both opined Claimant had **mild to moderate limitations** in the Paragraph B requirements.[52] The ALJ found these opinions "consistent with the overall treatment records, including numerous mental status evaluations largely within normal limits." However, the ALJ found "the consultants' specific opinion that the claimant is moderately limited in completing a normal workday/week is not consistent with the overall record."[53]

**C.   Analysis**

A decision of the Commissioner to deny benefits will not be overturned unless it either is not supported by substantial evidence or is based upon legal error. "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Having carefully reviewed the administrative record, including extensive medical records, the Court concludes, based upon the record as a whole, that the ALJ's decision denying disability benefits to Claimant was not supported by substantial evidence for the following reasons.

First, "the Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits, . . . and many home activities are not easily

---

[50] Tr. 24.
[51] Tr. 25.
[52] Tr. 128, 115–16.
[53] Tr. 25.

transferable to what may be the more grueling environment of the workplace, where it might be impossible to periodically rest or take medication."[54] Claimant describes the ALJ's summary of the medical records as a "highly selective analysis," and a "gross mischaracterization of the record, which details a long history of treatment-resistant panic, depression, insomnia, and generalized anxiety."[55] Claimant notes that it is well-settled that variable presentation of symptoms, such as "good and bad days," are "practically a hallmark feature of mental impairments, and an ALJ plainly errs when he selectively culls the record for normal exam findings in a mental impairment case where the record also demonstrates significant mental impairment."[56] Claimant cites back to his opening brief, identifying medical records showing: off task due to lack of focus;[57] frequent panic attacks;[58] excessive sleeping;[59] medication side effects;[60] increased depression symptoms and difficulty coping with tangential thought process;[61] mGAF score of 43.5, "which shows some serious symptoms or impairment in functioning";[62] and insomnia, guarded attitude,

---

[54] *Fair v. Bowen*, 885 F.2d at 603.
[55] Docket 16 at 17.
[56] Docket 19 at 4–5 (citing *Janet M. v. Comm'r SSA*, No. 6:21-cv-00725-AR, 2022 U.S. Dist. LEXIS 230400, at *10 (D. Or. Dec. 22, 2022) (citing *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)) ("That a person who suffers from severe panic attacks, anxiety, and depression make some improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace.").
[57] Docket 19 at n.4 (citing Tr. 113–16; 127–33; 224–30; 327; 601; 622; 754; 771; 854; 945; 955).
[58] *Id*. (citing Tr. 68–84; 227; 230; 331; 328; 601–08; 625; 659; 663).
[59] *Id*. (citing Tr. 83–84; 331; 601; 648; 657; 771; 808; 828; 855; 955).
[60] *Id*. (citing Tr. 659; 663 (if he does not take his anxiety medication, he will have a panic attack, but when he does, he is tired and sleepy)).
[61] *Id*. (citing Tr. 624).
[62] *Id*. (citing Tr. 637).

*T. D. v. Kijakazi*            Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings          Page 12
Case 3:22-cv-00225-RRB    Document 20    Filed 12/06/23    Page 12 of 15

restricted affect, circumstantial thought processes.[63]  The Court agrees that Claimant's medical history is significantly downplayed in the ALJ's written opinion.

Second, the Court notes that the ALJ disregarded vocational expert testimony that did not align with his conclusions.  In both 2018 and 2021, the vocational experts testified that there was unskilled work in the national economy for an individual of Claimant's age, education, and past work experience, with no physical limitations, but who would be limited to:  simple and routine and repetitive tasks; only occasional interaction with coworkers, supervisors, or the public; and no tandem tasks or a high production rate.[64]  But the 2018 VE opined that if that same individual "would not be able to sustain sufficient persistence or pace to do even routine tasks on a regular and continuing basis for eight hours a day," that it would "pretty much eliminate" any jobs.[65]  And in 2021, a different VE concluded that if an individual was off-task 15 percent of a typical workday, such an individual would not be employable.[66]  The ALJ did not discuss the VE opinions that being off-task or absent would preclude employment, despite treatment records indicating Claimant's diagnoses of moderate to severe Major Depressive Disorder Recurring, Generalized Anxiety Disorder, and PTSD,[67] and Claimant's testimony regarding daily panic attacks.

This Court also finds that the ALJ has not adequately supported his conclusion at Step 3 that Claimant does not meet the Paragraph B criteria of a listed

---

[63] *Id*. (citing Tr. 756–59).
[64] Tr. 51, 88–89.
[65] Tr. 52.
[66] Tr. 88–90.
[67] Tr. 315–457.

*T. D. v. Kijakazi*  Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings  Page 13
Case 3:22-cv-00225-RRB   Document 20   Filed 12/06/23   Page 13 of 15

impairment.  The ALJ found that Claimant had **mild limitations** in understanding, remembering, or applying information, and in his ability to adapt or manage himself, and **moderate limitations** in his ability to concentrate, persist, or maintain pace, and in interacting with others.  The ALJ did not acknowledge the 2018 testimony of the non-examining medical expert who opined that Claimant had "marked" difficulty interacting with others.[68]  Nor did the ALJ call a psychological expert to testify at the 2021 hearing.  And although the ALJ dismissed examining physician Dr. Gonzalez's opinions of "gross" or "marked" impairments as outdated,[69] the ALJ did nothing to develop the record to update this opinion.  Additionally, although the ALJ found the opinions of the non-examining state agency psychiatric consultants "generally persuasive" and "consistent with the overall treatment records," he then found their opinions that Claimant was "moderately limited in completing a normal workday/week," were "not consistent with the overall record."[70]

       Dr. Gonzalez and the state agency psychiatric consultants were all neutral physicians appointed by the state, and the ALJ's dismissal of their opinions, in whole or in part, because they did not align with the ALJ's cherry-picked summary of the record does not constitute "substantial evidence."  Having dismissed most of the opinions that would support a disability finding, the ALJ then discounted Claimant's testimony as unsupported by the record.  But a review of Claimant's treating physician's treatment notes reveals

---

[68] Tr. 39.
[69] Tr. 314.
[70] Tr. 25.

*T. D. v. Kijakazi*                                                                                                   Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings                                                     Page 14
Case 3:22-cv-00225-RRB    Document 20    Filed 12/06/23    Page 14 of 15

diagnoses, prescribed treatments, medications, and clinical findings of significant psychiatric diagnoses. Moreover, no physician indicated concerns of malingering. Even the neutral examining physician, Dr. Gonzalez, found Claimant "forthright."[71]

In making the determination that the ALJ's decision was not supported by substantial evidence, this Court considered the evidence in its entirety, weighing both the evidence that supported and that which detracted from the ALJ's conclusion.[72] The Court finds that the ALJ's conclusions that Claimant does not meet a listed impairment, and that he could perform work for eight hours per day without being off task, are not supported by substantial evidence for the reasons discussed in this order. Such error was not harmless.

## V. CONCLUSION

Based on the foregoing, **IT IS HEREBY ORDERED** that Claimant's motion at **Docket 16** is **GRANTED** and this matter is **REMANDED** for further proceedings.

IT IS SO ORDERED this 6th day of December, 2023, at Anchorage, Alaska.

/s/ Ralph R. Beistline
RALPH R. BEISTLINE
Senior United States District Judge

---

[71] Tr. 314.
[72] *Jones*, 760 F.2d at 995.

*T. D. v. Kijakazi*  Case No. 3:22-cv-00225-RRB
Order Remanding for Further Proceedings  Page 15
Case 3:22-cv-00225-RRB   Document 20   Filed 12/06/23   Page 15 of 15